**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-07-00871-001-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Hanoi Barbaro Acosta, | |
| Defendant. | |

Hanoi Barbaro Acosta is currently serving a two hundred sixty-two month sentence and is scheduled to be released on June 27, 2027. In January 2021, Acosta's counsel filed a motion for "compassionate release or sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)" based, in large part, on the risk to Acosta's health from COVID-19. (Doc. 387). While Acosta already contracted COVID-19 and recovered, he argues his medical condition of hypertension presents "a potential increased risk of severe illness" should he contract it again. (Doc. 387 at 9). The government opposes the motion, arguing Acosta does not have "medical conditions that would constitute extraordinary and compelling reasons warranting his immediate release." (Doc. 388 at 9). Moreover, the government believes Acosta remains a danger to the public. (Doc. 388 at 12). Considering Acosta's medical condition, his criminal history, and the risk he continues to present to the public, he is not entitled to relief.

## BACKGROUND

Acosta has a lengthy criminal history dating back to when he was 16. When he was

18, Acosta was convicted of armed robbery based on "a series of convenience store robberies" where he brandished "a toy BB gun." (Doc. 387 at 16). For those crimes Acosta was sentenced to 110 months imprisonment. He served that sentence and was released in 2004.[1] A few years later, Acosta transported a juvenile, for the purposes of prostitution, from Oregon, to Nevada, to California, and eventually Arizona. After being arrested in July 2007 in connection with that transportation, Acosta made several phone calls to individuals, attempting to influence their testimony. Also while in custody pending trial, Acosta participated in a violent attack on detention officers which resulted in serious injuries to the officers.

In 2008, Acosta proceeded to trial and was convicted of Interstate Transportation of a Minor for Prostitution. He was sentenced to two hundred sixty-two months in prison and his current release date is June 29, 2027.

On September 30, 2020, Acosta sent the warden of his facility an administrative request for compassionate release. (Doc. 387-1 at 1). In that request Acosta stated he has "hypertension and degenerative joint disease" and death was "probable" if he contracted COVID-19. The warden denied Acosta's request on November 5, 2020. (Doc. 387-2 at 1). Shortly after that denial, Acosta contracted COVID-19. (Doc. 387-6 at 1). Around the time of his diagnosis, Acosta and his cellmate had a physical altercation. (Doc. 384 at 6). According to Acosta, his cellmate "posed a threat to Mr. Acosta" and Acosta was merely protecting himself. (Doc. 389 at 4). Acosta does not provide additional details regarding the nature of the threat. The prison records describe a different situation where Acosta "began striking" his cellmate who was in handcuffs at the time. (Doc. 384 at 6). Acosta then ignored an officer's "direct order . . . to cease his actions." (Doc. 384 at 6). The

---

[1] Upon his release from prison in 2004, Acosta was "turned over to Immigration and Customs Enforcement and ordered removed from the United States." (Doc. 388 at 2). That removal did not occur because of "diplomatic relations at that time." (Doc. 388 at 2). Acosta was released from immigration custody and committed the crime for which he is currently serving his sentence. It is unclear whether, upon Acosta's completion of his current sentence, the government will attempt to deport Acosta again. If so, it appears granting his motion for compassionate release would be, in some respects, futile. Because the parties have not addressed the immigration issue and Acosta is not entitled to relief in any event, the Court need not consider the immigration issue.

1  officer had to use pepper spray to stop the assault.

2        On November 12, 2020, Acosta filed a pro se motion for early release. (Doc. 381).
3  The Court appointed counsel and, in January 2021, that counsel filed an amended motion
4  for early release. (Doc. 387). The only medical condition cited in the amended motion is
5  Acosta's "Stage 2 hypertension." (Doc. 387 at 13). The amended motion also claims
6  Acosta's previous COVID-19 infection means the Bureau of Prisons "failed to adequately
7  protect" him in the past and there is no indication it will protect him in the future. (Doc.
8  387 at 12). Acosta claims his prior infection "provides no known shield against re-
9  infection." (Doc. 387 at 13-14).

10       In addition to claiming he is at elevated risk should he contract COVID-19 for a
11 second time, Acosta argues he has pursued a variety of "training courses" in an attempt to
12 make "the most of his time" in prison. (Doc. 387 at 14). Acosta contends an early release
13 would be appropriate because he received a harsher sentence than "the female participants
14 culpable of the same conduct," a harsher sentence than "similar defendants" prosecuted in
15 Arizona, and a "far greater sentence" than the "majority of the FBI targets" in other child
16 exploitation crimes. Finally, Acosta claims he is not a danger to the community because
17 there is no indication in his "felony criminal history" that supervised release would fail to
18 deter him from committing other crimes. (Doc. 387 at 16). The government opposes relief.

19       According to the government, Acosta does not have "any medical conditions that
20 have been identified by the CDC as putting him at higher risk for severe illness." (Doc.
21 388 at 9). The government contends Acosta's only condition, hypertension, "might" create
22 an increased risk of "severe illness from COVID-19." (Doc. 388 at 10). But the
23 government asserts hypertension is a common ailment and stresses there is insufficient
24 evidence of the increased risk hypertension poses in conjunction with COVID-19. Thus,
25 the government believes Acosta has not presented "extraordinary and compelling reason
26 for release." (Doc. 388 at 10). Finally, the government believes Acosta continues to be a
27 threat to the community. The government points out the present conviction was Acosta's
28 seventh felony conviction and there is no evidence his violent behavior will not continue

if he is released. (Doc. 388 at 13).

## ANALYSIS

As relevant here, 18 U.S.C. § 3582(c) allows a court to reduce a defendant's term of imprisonment if, "after considering the factors set forth in [18 U.S.C. §] 3553(a)," the court concludes "extraordinary and compelling reasons warrant such a reduction."[2] Thus, the Court will first address the § 3553(a) factors before addressing if Acosta has identified "extraordinary and compelling reasons" supporting his request.

The § 3553(a) factors require the Court consider, among others, "the nature and circumstances of the offense and the history and characteristics of the defendant," the need for a particular sentence "to reflect the seriousness of the offense," what sentence will provide "adequate deterrence to criminal conduct," and what sentence will "protect the public from further crimes of the defendant." The mandatory minimum sentence for Acosta's crime was ten years. (Doc. 318 at 1). And the guideline range, given Acosta's criminal history, was 262 to 327 months. At the time of Acosta's sentencing, the § 3553(a) factors supported a sentence of two hundred sixty-two months, the very "low end of the advisory Guidelines range." *United States v. Acosta*, 388 F. App'x 620, 623 (9th Cir. 2010). Little has changed since sentencing.

Acosta has a lengthy criminal history and transporting a minor for purposes of prostitution is a serious offense. At the time of his sentencing, Acosta did not recognize the seriousness of his offense. Instead, he argued his conviction was "just ridiculous" and he had been convicted based on "nothing." (Doc. 363 at 9, 12). As recently as 2017, Acosta was continuing to argue he had committed no crime. *See Acosta v. Ebbert*, No. 1:16-CV-02232, 2017 WL 432666, at *1 (M.D. Pa. Feb. 1, 2017). The seriousness of the offense and Acosta's refusal to recognize it as such supported a lengthy sentence and continue to do so. In addition, Acosta's long-standing belief that his behavior was appropriate means his sentence has not yet deterred him from such behavior and the public

---

[2] A defendant cannot seek a reduction before satisfying an administrative exhaustion requirement but the government implicitly concedes Acosta satisfied that requirement. (Doc. 388 at 6) (discussing administrative exhaustion requirement but not invoking it as applicable).

- 4 -

remains at risk should Acosta be released. The § 3553(a) factors continue to support a two hundred sixty-two months sentence.

Assuming Acosta had established the § 3553(a) factors supported his request, he has not identified "extraordinary and compelling" reasons meriting relief. While § 3582(c) does not define 'extraordinary and compelling reasons,'" courts have looked to a policy statement from the Sentencing Commission for guidance. *See, e.g.*, *United States, v. Lane*, No. CR-12-01419-PHX-DGC, 2021 WL 661982, at *3 (D. Ariz. Feb. 19, 2021). That policy statement identifies medical conditions that may qualify as "extraordinary and compelling reasons." For example, "a terminal illness" or any medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility" may qualify. *Id.* (quoting U.S.S.G. § 1B1.13). Courts have concluded medical conditions such as "diabetes, chronic obstructive pulmonary disease, and cancer" qualify under this framework. *United States v. Johnson*, No. CR 02-310 (JDB), 2020 WL 5518360, at *3 (D.D.C. Sept. 12, 2020). But most courts to address the issue have concluded hypertension, standing alone, does not establish an extraordinary and compelling reason for granting relief. *See id.* (citing cases).

Acosta's sole medical condition, hypertension, means he "*might* be at an increased risk for severe illness from the virus that causes COVID-19." *People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Feb. 24, 2021) (emphasis added). But Acosta is not elderly and has already recovered from COVID-19. There is no evidence his previous infection resulted in long-term harm and, while reinfection appears possible, indications are that reinfection is rare. *Reinfection with COVID-19*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html (last visited Feb. 24, 2021) ("Cases of reinfection with COVID-19 have been reported, but remain rare."). Thus, Acosta's medical situation does not meet the "extraordinary and compelling" threshold. In sum, neither the § 3553(a) factors nor Acosta's medical condition support his motion.

1  Accordingly,

2  **IT IS ORDERED** the Motion to Reduce Sentence (Doc. 387) is **DENIED**.

3  Dated this 9th day of March, 2021.

Honorable Roslyn O. Silver
Senior United States District Judge